UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DR. MICHAEL JAFFÉ,<br>in his capacity as Insolvency Administrator<br>over the assets of Qimonda AG,<br><br>                                        Plaintiff,<br><br>        v.<br><br>LSI CORPORATION,<br>ATMEL CORPORATION,<br>CYPRESS SEMICONDUCTOR<br>CORPORATION,<br>MAGNACHIP SEMICONDUCTOR<br>CORPORATION,<br>MAGNACHIP SEMICONDUCTOR, INC., and<br>ON SEMICONDUCTOR CORPORATION,<br><br>                                        Defendants. | Civil Action No. 3:12-CV-25 |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on the following motions: (1) Defendant Atmel

Corporation's ("Atmel") Motion to Dismiss for Misjoinder or, in the Alternative, to Transfer

Venue to the Northern District of California Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 49);

and (2) Defendants Cypress Semiconductor Corporation ("Cypress"), LSI Corporation

("LSI"), MagnaChip Semiconductor Corporation ("MSC"), MagnaChip Semiconductor, Inc.

("MSA") and ON Semiconductor Corporation's ("ON") (collectively "Remaining

Defendants") Motion to Transfer Venue to the Northern District of California Pursuant to

28 U.S.C. § 1404(a). (Doc. No. 59.) For the reasons stated below, the Court GRANTS

Defendant Atmel's Motion to Transfer Venue to the Northern District of California, GRANTS

the Remaining Defendants' Motion to Transfer Venue to the Northern District of California,

and DEFERS Defendant Atmel's Motion to Dismiss for Misjoinder for consideration by the United States District Court for the Northern District of California.

## I.      BACKGROUND

On January 10, 2012, Plaintiff Dr. Michael Jaffé, acting in his capacity as Insolvency Administrator over the assets of Qimonda AG, a German corporation, filed suit against LSI, seeking injunctive relief and damages for LSI's alleged infringement of five patents: U.S. Patent Nos. 5,851,899; 5,821,804; 6,559,547; 5,780,929; and 5,646,434 (collectively "Patents").  (Compl., Doc. No. 1.) These patents relate to semiconductor integrated circuits that were manufactured at the facility of Qimonda Richmond LLC ("Qimonda Richmond"), a wholly-owned subsidiary of Qimonda AG having its principal place of business in Richmond, Virginia. Qimonda Richmond employed over two thousand employees at its facility in Richmond, which closed in 2009 upon Qimonda Richmond's filing for Chapter 11 bankruptcy protection.

On February 16, 2012, Dr. Jaffé filed an Amended Complaint joining Atmel, Cypress, MSC, MSA, and ON as additional Defendants. (Am. Compl., Doc. No. 13.) The Amended Complaint alleges that Defendants directly and indirectly infringe the Patents.  On April 19, 2012, Atmel filed its Motion seeking to dismiss the claims against it, or in the alternative, to transfer venue to the Northern District of California. The Remaining Defendants brought their own Motion seeking transfer to the Northern District of California six days later.

## II.      LEGAL STANDARD

A district court may transfer a civil action "to any other district or division where it might have been brought" if the transferee district is more convenient for parties and witnesses. 28 U.S.C. § 1404(a). This decision is committed to the district court's sound

discretion. *Inline Connection Corp. v. Verizon Internet Servs., Inc.*, 402 F. Supp. 2d 695, 699 (E.D. Va. 2005).

When deciding whether a transfer of venue is appropriate under this statutory provision, courts follow a two-step inquiry: First, the court must determine whether the claims could have been brought in the transferee forum. *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 735 (E.D. Va. 2007). Second, the court must consider three factors: (1) the plaintiff's choice of venue, (2) the convenience of the parties and witnesses, and (3) the interests of justice. *Id.* at 735–36.

### III.   ANALYSIS

#### A.  Atmel's Motion to Transfer Venue

The first step in the Court's venue transfer analysis is to determine whether Atmel could have brought this action in the venue to which it seeks to transfer this action—the Northern District of California ("NDCA"). Under 28 U.S.C. § 1400(b), a patent infringement plaintiff can lay venue in any "district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." For venue purposes, Atmel "resides" in any judicial district where it is subject to personal jurisdiction upon commencement of the action. *See* 28 U.S.C. § 1391(c)(2). Atmel's headquarters are in San Jose, California, which is within the NDCA. Thus, Atmel resides within the NDCA and would be subject to personal jurisdiction there. Jaffé therefore cannot dispute that he could have brought this action against Atmel in the NDCA.

The second step in the Court's venue transfer analysis is to weigh three factors: (1) the plaintiff's choice of venue, (2) the convenience of the parties and witnesses, and (3) the interests of justice. *JTH Tax,* 482 F. Supp. 2d at 735–36.

3

### i.  *Jaffé's choice of venue*

Atmel first argues that Jaffé's choice of venue—the Richmond Division of the EDVA—is not entitled to any weight. While there is a presumption that a suit should stay in the forum chosen by the plaintiff, Atmel contends "the plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum." *Lycos, Inc. v. TiVo, Inc.,* 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (quoting *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003)).  "[I]f there is little connection between the claims and [the chosen forum], that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635 (E.D. Va. 2003).

Atmel relies on *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991 (E.D. Va. 2011), where the district court found that a "non-practicing" patent infringement plaintiff whose "main line of business is enforcing its intellectual property rights" had only a weak connection with the EDVA. *Id.* at 995. The plaintiff's connections to the EDVA were: (1) that it enforced its intellectual property rights here; (2) that it had a part-time, co-owner employee who resided in the district; and (3) that it incorporated in Alexandria one week before purchasing the patent portfolio and five months before filing the lawsuit. *Id.* The district court accorded "minimal weight" to the plaintiff's forum choice "in light of the weak connection between the plaintiff and the Eastern District of Virginia." *Id.*

Atmel argues that here, Jaffé's connections to the EDVA are even weaker: Atmel states that unlike the *Pragmatus* plaintiff, Jaffé does not reside here or have any employees here, and that his only connection to the district is that he is using it in an effort to

4

monetize patents so as to satisfy Qimonda's creditors. Atmel contends that Jaffé cannot place any reliance on Qimonda's *past* presence and operations in the Richmond area; Qimonda's subsidiary located in Richmond shut down over three years ago. (Am. Compl. ¶ 5, Doc. No. 13.) Atmel stresses that the Supreme Court has said that the "might have been brought" language of the venue transfer statute "directs the attention of the judge who is considering a transfer to the situation which existed when suit *was instituted*." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (emphasis added).

Jaffé argues that his choice of forum as insolvency administrator is entitled to substantial weight, as it is home forum "for all practical purposes." (Pl.'s Mem. in Opp. Atmel Mot. Misjoinder, Transfer 14.) In contrast with Atmel, Jaffé states that Qimonda's past operation of a semiconductor manufacturing facility in Virginia shows Jaffé's strong connections with this District. Further, Jaffé points out that he has been designated Qimonda's "sole representative" in this country, which means he is charged with administering Qimonda's assets in the United States, and that up until just a few weeks ago, as part of that charge, he had another patent infringement litigation pending before this Court. For these reasons, Jaffé states that he has "significant ties" to the EDVA, and that it is his "home forum."

Jaffé's arguments are unpersuasive. To establish a connection with the EDVA, Jaffé can only point to the past presence of Qimonda's subsidiary in the EDVA, Qimonda's ongoing bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Virginia ("Bankruptcy Court"), and the prior patent infringement litigation against LSI that this Court dismissed earlier this year. None of these facts show that Jaffé's connection to the EDVA extends beyond the fact that it is his preferred venue for litigation.

The bankruptcy proceeding if anything points more to Jaffé's connection with Germany and not the EDVA—in successfully achieving the Bankruptcy Court's  recognition of the United States bankruptcy proceeding as a foreign "main" proceeding, Jaffé admits that Germany, and not the EDVA, is Qimonda's "center of main interests."[1] Further, the operations of Qimonda's subsidiary, and the Qimonda infringement suit against LSI, are past issues not relevant to the Court's venue analysis—relevant under the statute are the conditions that "existed when suit was instituted." *Blaski*, 363 U.S. at 343. Under these facts, the Court finds that Jaffé's choice of forum is entitled to little, if any, weight.

### ii.   *Convenience to the parties and witnesses*

Atmel next argues that litigating in the NDCA would be much more convenient to the parties and witnesses. To support this claim, Atmel relies on the presence in the NDCA of its potential employee witnesses and electronic documents, its utter lack of presence in the EDVA, and Jaffé's tenuous connection with the EDVA. Atmel contends that nonparty witnesses—nearly all of whom are inventors of the Patents residing in Germany—would be equally burdened by travel to Richmond, Virginia or to the NDCA.

Jaffé responds that convenience to the parties and witnesses is neutral: Jaffé has already demonstrated the convenience of litigating in this area by his participation in ongoing bankruptcy proceedings, while Atmel overstates its presence in the NDCA, conveniently ignoring its footprint in Colorado and in other undisclosed locations overseas. As Jaffé would have it, the evidence only shows that both sides have some interest in their chosen district. Moving the litigation to California, according to Jaffé, would therefore only serve to "shift the balance of inconvenience from one party to the other." *Heinz Kettler*

---

[1] Order Recognizing Foreign Main Proceeding of Qimonda AG, *In re Qimonda AG*, No. 09-14766-RGM (Bankr. E.D. Va. July 22, 2009), Doc. No. 56.

*GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010). Jaffé also perceives

the burden on nonparty witnesses differently; in Jaffé's view, traveling from Germany to

California, rather than from Germany to Richmond, is far more onerous. Jaffé states it is

"ludicrous" to claim the inventors would be indifferent to traveling an additional 2,500

miles across the continental United States. Jaffé also notes that Atmel has failed to point to

even one nonparty witness who would be subject to compulsory process in the NDCA.

Armed with these points, Jaffé argues that the convenience factor weighs heavily against a

transfer.

Save for the issue of nonparty witnesses, the convenience inquiry tips in favor of a

transfer to the NDCA. To address the nonparty witnesses first, Atmel's position that a

litigation in either Richmond or the NDCA would be equally burdensome for the nine of ten

inventors of the patents-in-suit presumably located in Germany is most reasonable. The

parties' quibbling about the burdens of international air travel show in the end that it

would probably take about the same amount of time to fly nonstop from Frankfurt,

Germany to San Francisco as it would to make it to Richmond, as nonstop flights to

Richmond from Germany are either few or nonexistent. The big picture is that international

air travel would be burdensome wherever this case is litigated.

The issue of convenience to the parties, however, is entirely different. First, and

importantly, Atmel is headquartered in the NDCA in San Jose, California. All Atmel

employees with relevant knowledge of the technical design, development, manufacturing,

and operation of the accused products are located either at Atmel's headquarters in San

Jose, in Colorado, or overseas. Moreover, *all* potential Atmel employee witnesses who can

speak to the marketing, sales, and revenues of the accused products work in the San Jose

headquarters. Atmel also notes in its reply brief that all of its accused products are "Touchscreen Microcontroller products," and that the leadership of that business segment is located in San Jose. Finally, Atmel states that all of its electronic documents are maintained using document management systems readily accessible from the San Jose headquarters. While the Court gives less weight to the location from which electronic records can be readily accessed than it would to the location of such records in a paper case, *cf. Newman v. Advanced Tech. Innovation Corp.*, No. 1:12-CV-24, 2012 WL 1414859, at *3 (E.D. Va. Apr. 20, 2012), this fact still militates in favor of a transfer, given that the Federal Circuit has said: "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)) (internal quotation marks omitted); *see Newman*, 2012 WL 1414859, at *3 ("Although entitled to little weight, this factor nevertheless favors transfer more than it disfavors it.") Given that Jaffé's connection with the EDVA is tenuous and in reality amounts to little more than his desire to litigate here, the Court finds that the location of Atmel's witnesses, and the location from which Atmel's documents can be easily accessed, weighs in favor of transfer.

### iii.   The interests of justice

The interests of justice factor "encompasses public interest factors aimed at 'systemic integrity and fairness,'" *Byerson v. Equifax Info.  Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005)), the most prominent elements of which are "judicial economy and the

avoidance of inconsistent judgments." *Id.* "Fairness is assessed by considering docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* (citing *Samsung*, 386 F. Supp. 2d at 721 n.16).

Atmel relies heavily on the interest in having local controversies decided at home. Atmel cites *United States v. Microsemi Corp.*, No. 1:08-CV-1311, 2009 WL 577491, at *10–11 (E.D. Va. Mar. 4, 2009), which found that this factor cut in favor of transferring to the district where the claim arose, and *NanoEnTek, Inc. v. Bio-Rad Laboratories, Inc.*, No. 2:11-CV-427, 2011 WL 6023189, at *7 (E.D. Va. Dec. 2, 2011), where the Court found that the interests of justice favored a transfer where the citizens of the district had no special interest in the case's outcome, no manufacturing occurred in the district, and any alleged infringement through the product was not unique to the district. Atmel argues that this controversy is local to the NDCA because Atmel makes and sells its products there. Atmel contends that as no other public interest considerations militate against transfer to the NDCA, this factor favors a transfer.

Jaffé argues that the interests of justice weigh heavily in favor of keeping the action in the EDVA. Jaffé relies heavily on two issues: the undesirability of conducting a parallel litigation should the Court believe one of the two pending transfer should be granted, and the concern of docket congestion. The former issue is no longer relevant, because the Court has determined that the case against the Remaining Defendants should be transferred. Jaffé states that the latter concern of docket congestion weighs heavily in favor of keeping the action in the EDVA, as the time from filing to trial in the NDCA exceeds the EDVA by a factor of almost three.

The Court finds that the interests of justice factor tips in favor of transferring the action to the NDCA. As indicated above, the important interests of judicial economy and avoidance of inconsistent judgments, *see Byerson*, 467 F. Supp. 2d at 635, will be preserved, as the Court has determined that this entire case should be transferred to the NDCA. Fairness concerns such as "docket congestion, the interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law," *id.*, will therefore inform the Court's analysis. As this case does not involve state law, but rather only federal patent law, no concerns arise with respect to knowledge of the applicable law or avoiding conflicts of law. The other fairness concerns, however, are at play. In arguing that the interests of justice tip in favor of a transfer, Atmel leans heavily on the "local controversy" concern, and with good reason, as it represents that the accused products are made and sold in San Jose. As in *NanoEnTek, supra*, citizens in the EDVA have no special interest in this case's outcome, no manufacturing relevant to this case occurs here, and any alleged infringement through the product is not unique to the EDVA (indeed, if we view the significance of infringement in the EDVA through the lens of damages, the EDVA is incredibly insignificant, as only .00005% of Atmel's 2011 annual revenue came from accused products sold here (Inserra Decl. ¶ 5)). Atmel therefore has a strong argument that the situs of this controversy is San Jose, and not Richmond. This being the case, it is undoubtedly more fair to burden jurors in the NDCA rather than Richmond. A final concern, of course, is docket congestion. While it is true that this case would almost definitely move with far greater dispatch on our docket, courts have refused to accord this concern controlling weight and have deemed it only "'a minor consideration' where . . . the other convenience and justice

factors weigh in favor of transfer." *Lycos*, 499 F. Supp. 2d at 696 (quoting *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 520 (E.D. Va. 1999)). That is precisely the situation here, and the view is well-reasoned: if the EDVA's speed was afforded controlling weight in every venue transfer motion, cases better suited for resolution elsewhere would never make it out of the District.[2] On the whole, then, the interest in having the controversy decided in the NDCA tips in favor of a transfer.

Having determined that Jaffé's suit against Atmel could have been brought in the NDCA, and that each factor relevant to the Court's venue analysis militates in favor of a transfer, the Court concludes that transfer is appropriate.

### B.   Remaining Defendants' Motion to Transfer Venue

As an initial matter, as with Atmel, it is clear that Jaffé could have brought an action against the Remaining Defendants in the NDCA: as expanded upon in more detail in the below discussion of convenience to the parties, all of the Remaining Defendants are either headquartered in the NDCA or have significant operations there, and thus are residents of the NDCA and subject to personal jurisdiction there. Jaffé therefore could have brought an action against the Remaining Defendants in the NDCA.

Unsurprisingly, the Remaining Defendants' arguments in support of a transfer mirror those of Atmel in many respects. As with Atmel's Motion, the Court must assess (1) Jaffé's forum choice, (2) the convenience to the parties and witnesses, and (3) the interests of justice. *JTH Tax,* 482 F. Supp. 2d at 735–36.

---

[2] *Cf. GTE Wireless*, 71 F. Supp. 2d at 520 ("Docket conditions, although relevant, are a minor consideration when all other reasonable and logical factors would result in a transfer of venue. If the rule were otherwise, every company with a national market and a patent infringement claim would be entitled to venue in this District.").

### i.   *Jaffé's choice of venue*

The Remaining Defendants' arguments, and Jaffé's responses, with respect to the first factor—Jaffé's forum choice—unsurprisingly tread on essentially the same ground covered in Atmel's transfer motion. The Court's conclusion on this factor, then, remains the same: Jaffé's venue choice is entitled to little to no weight, because the EDVA is neither Jaffé's home forum nor is it related to the claims at issue.

### ii.   *Convenience to the parties and witnesses*

Moving on to the convenience factors, the parties' points and arguments with respect to nonparty witnesses and to Jaffé are again—expectedly—part and parcel the same. So are the Court's conclusions: nonparty witnesses will be burdened whether they travel to the East or West Coast, and it would be no more convenient for Jaffé to litigate in Richmond than it would be in the NDCA.

The issue of the Remaining Defendants' convenience, however, is unique. Broadly, the Remaining Defendants argue that their witnesses and evidence are in or "near" northern California, and that this fact weighs in favor of a transfer.

The Remaining Defendants argue Cypress has no substantive ties to Virginia, and that "[t]he convenience to Cypress, its witnesses, and its case, lies heavily in the NDCA, where its principal place of business and the strategic center of its operations exist." (Defs.' Mem. Supp. Mot. Transfer Venue 3.)

Two MagnaChip entities are named as Defendants, one headquartered in the NDCA (MSA) and the other (apparently) in Luxembourg (MSC).[3] MSA is a subsidiary of MSC,

---

[3] The Remaining Defendants' brief, and the declaration of the MagnaChip corporate representative, state that MSC is headquartered in the same state in which it is incorporated, Delaware.  (Defs.' Mem. Supp. Mot. Transfer Venue 4; McFarland Decl. ¶ 3.)

which does not maintain any offices or manufacturing facilities in the United States. MSA, in contrast, is responsible for sales and marketing of MagnaChip products within the United States, including at least some of the accused MagnaChip products. All MSA employees but two (who work in leased space in Austin, Texas) work in the NDCA. The Remaining Defendants argue that MSA's presence in the NDCA, and the fact that neither MSA nor MSC have any presence whatsoever in the EDVA, weighs in favor of transferring this case.

LSI is a corporation organized under the laws of Delaware that has its principal place of business in Milpitas, California, which is located in the NDCA. LSI's Milpitas employees handle sales, marketing, and research and development of products, including LSI's accused products. While the Remaining Defendants explain that LSI has major design centers located in a number of locations other than Milpitas, including four locations in Colorado,[4] and that some of LSI's fact witnesses, documents, and proprietary information, are likewise outside of Milpitas, the Remaining Defendants stress that some of LSI's design centers, fact witnesses, and documents are in Milpita as well. Based on LSI's presence in Milpita, the Remaining Defendants argue that it would be more convenient for LSI to litigate in the NDCA.

ON, a global company headquartered in Phoenix, Arizona, has some employees in California; the vast majority of ON's employees, however, work from facilities in Arizona, Idaho, Oregon, and California. The Remaining Defendants claim that it would be more convenient for ON to litigate this suit in the NDCA because some of their party witnesses

---

While ultimately irrelevant to the Court's analysis, it appears from the Court's own research that MSC is headquartered in Luxembourg and not Delaware.
[4] The Remaining Defendants also admit that LSI has one employee who resides in Virginia Beach, Virginia, telecommuting from that location, but stress that employee is not involved in any design, development, testing, or manufacturing related to LSI's accused products.

with knowledge of relevant prior art reside in the NDCA and work out of ON's Santa Clara,

California facility. While ON's potential witnesses with knowledge of design, development,

manufacture, and sales, are located and work out of other ON's other facilities in Arizona,

Oregon, Japan and Canada, the Remaining Defendants state that

> it would be far more convenient for [these] likely witnesses to appear for
> testimony in the NDCA rather than in the EDVA. California is significantly
> closer geographically for witnesses and is where the company has a physical
> presence. ON Semiconductor has over 165 employees located within the
> NDCA, and a design and engineering solution center in Santa Clara, California,
> with over 150 employees.

(Defs.' Mem. Supp. Mot. Transfer Venue 8–9.) The Remaining Defendants explain the NDCA

would be a far more convenient forum for the ON employees who work outside of the

NDCA not only because they are closer geographically to the NDCA, but also because those

employees could schedule customer visits in California and work from ON's facility in Santa

Clara during travel periods. Further, while documents and proprietary information related

to the design, development, testing, and manufacturing of ON accused products are

maintained at ON's Japan or Canada facilities, those records can be made available at ON's

Santa Clara facility. With these issues in mind, ON would prefer to litigate in the NDCA.

Under these facts, the Remaining Defendants argue that on the whole, it would be

far more convenient for the parties—from both the perspective of party witnesses and

party documents—to litigate in the NDCA. The Remaining Defendants concede that party

witnesses receive less weight than their nonparty counterparts, as they are presumably

under each party's control, but emphasize that *no* party witnesses, and no material

evidence, appears to be located in Virginia. This, they argue, militates heavily in favor of a

transfer.

Jaffé responds that the Remaining Defendants stand to gain little by transferring the case to the NDCA where their evidence shows that their relevant witnesses and documents are dispersed around the globe. In short, Jaffé claims that the truth is that this case is a worldwide one, that California is not its "natural center of gravity," and that the evidence before the Court only shows that both sides in the litigation have "some interest in their chosen district." (Pl.'s Mem. Opp. Mot. Transfer Venue 12.) Under these circumstances, Jaffé proffers the same argument and quote that he did in opposing Atmel's points on party convenience: Jaffé insists that transfer is inappropriate, as "it will only serve to shift the balance of inconvenience from one party to the other." *Heinz Kettler*, 750 F. Supp. 2d at 668.

The Court finds that the significant presence in the NDCA of each of the Remaining Defendants, balanced against their near complete lack of presence in Virginia, sufficient to tip the balance of the convenience factor in favor transferring this action. The following passage cited by the Remaining Defendants applies well to this case:

> While Plaintiff has offered evidence [that] the witnesses and evidence relevant to this case are dispersed throughout the world, Plaintiff has not offered proof that *any* relevant evidence or witness is located in Virginia. . . . [A]bsent evidence that materials witnesses and evidence are in this district, the Court refuses to conclude that the Eastern District of Virginia is the preferred forum.

*Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 327 n.3 (E.D. Va. 2004). Our case is similar to *Agilent*. Evidence in the record shows that the Remaining Defendants have business operations, witnesses, and records germane to this action outside of the NDCA. More important, though, the evidence shows that the Remaining Defendants engage in substantial business activities in the NDCA, and that much of the evidence in this case is likely to come from witnesses and records located there. Jaffé has failed to show how

15

Virginia has a similar nexus. Accordingly, the Court finds that it would be more convenient to the parties and witnesses to resolve this matter in the NDCA.

### iii.   The interests of justice

As previously discussed, two important interests—judicial economy and the avoidance of inconsistent judgments—are not implicated in the Court's analysis of this factor, as the Court's ultimate determination is that it is appropriate to transfer this entire case. This factor therefore again turns on fairness concerns.

As with Atmel's Motion, there are no concerns with respect to knowledge of applicable law or conflicts of law. That leaves three fairness concerns: docket congestion, the interest in having local controversies decided at home, and the unfairness in burdening forum citizens with jury duty.

On the local controversy issue, Atmel cited *Microsemi* and *NanoEnTek, supra*, as illustrative of the principle that infringement lawsuits are local to where the maker and seller of the infringing products is located. The Remaining Defendants cite the same cases here, arguing "[t]here is a strong interest in having a dispute concerning the defendants' products resolved where the maker and seller of those products is located." (Defs.' Mem. Supp. Mot. Transfer Venue 14.) They note, as Atmel did, that Jaffé has no presence in the EDVA relating to the patents-in-suit, while the Remaining Defendants and Atmel, on the other hand, have significant connections to the NDCA—indeed, three of the five Remaining Defendants are headquartered there, and so is Atmel.  This being the case, the Remaining Defendants argue that when properly considered, the interest of justice weighs in favor of a transfer.

Beyond parallel litigation issues, Jaffé again relies on the speed of the EDVA's docket relative to the NDCA. Further, citing 28 U.S.C. § 1409(a), Jaffé asserts that "the venue statute encourages keeping related litigations in the same district as bankruptcy proceedings." (Pl.'s Mem. Opp. Mot. Transfer Venue 16.) Jaffé argues that this statutory provision and the interest in preserving judicial economy weigh in favor of keeping this case in Virginia because of Qimonda's ongoing Chapter 15 case.

Jaffé's assertion concerning the statutory provision is simply incorrect. The statute he cites governs venue with respect to bankruptcy *proceedings* related to bankruptcy *cases* filed under Title 11. *See In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 432 (Bankr. N.D. Ala. 2000). A bankruptcy case is "the umbrella under which all of the proceedings which follow the filing of a bankruptcy petition take place", *id.* (quoting 1 Collier on Bankruptcy ¶ 3.01[3] at 3–13 (15th ed. rev. 1999)) (internal quotation marks omitted), while a bankruptcy proceeding is "a litigated matter arising within a case during the course of administration of an estate." *Id.* (quoting *Blevins Elec., Inc. v. First Am. Nat'l Bank* (*In re Blevins*), 185 B.R. 250, 254 (Bankr. E.D. Tenn. 1995)) (internal quotation marks omitted). Section 1409(a), quite simply, provides that bankruptcy proceedings may be filed, but are not required to be filed, in the bankruptcy court in which the main bankruptcy case is pending. *Id.* Section 1409(a), then, simply does not speak to venue in this patent case, because Jaffé's allegation is not that this suit is a bankruptcy proceeding arising under the Bankruptcy Court's "related to" removal jurisdiction, *cf. Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (concluding in context of prior § 304 cross-border insolvency regime that "related to" removal jurisdiction is applicable in cross-border insolvency case

context), but rather that this case is "related to" the Chapter 15 case in a more general sense.

As with Atmel's Motion, the Court finds the EDVA's lack of connection with this case, and the NDCA's far stronger connection with it, weighs in favor of considering this case a controversy local to the NDCA and the potential jurors that reside there. For that reason, the Court finds that the interests of justice weigh in favor of transferring the claims against the Remaining Defendants to the NDCA.

Having determined that Jaffé's suit against the Remaining Defendants could have been brought in the NDCA, and that each factor relevant to the Court's venue analysis militates in favor of a transfer, the Court concludes that transfer of the action against the Remaining Defendants to the NDCA is appropriate. Accordingly, this suit will be transferred in its entirety to the NDCA.

### IV.    CONCLUSION

For the reasons stated below, the Court GRANTS Defendant Atmel's Motion to Transfer Venue to the Northern District of California, GRANTS the Remaining Defendants' Motion to Transfer Venue to the Northern District of California, and abstains from ruling on Defendant Atmel's Motion to Dismiss for Misjoinder, for that issue is best left to the wisdom of the Northern District of California.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this  15th   day of June 2012